Entered on Docket August 1, 2016

**Below is a Memorandum Decision of the Court.**



_____
**Marc Barreca
U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| In re:<br><br>Learned Family LLC,<br><br>              Debtors. | Case No. 11-16337-MLB<br><br>MEMORANDUM OPINION AND ORDER GRANTING IN PART FOUNDATION BANK'S MOTION FOR ORDER REQUIRING THE DEBTOR AND ITS MEMBERS TO COMPLY WITH THE CONFIRMED PLAN |

     Foundation Bank (the "**Bank**") has brought a Motion for Order Requiring the Debtor and its Members to Comply with the Confirmed Plan (the "**Motion**," Dkt. No. 178). The Motion was opposed by the debtor, Learned Family LLC (the "**Debtor**"). Following oral argument on July 21, 2016, I took the matter under advisement and set a further hearing for August 2, 2016. As discussed below, the motion is GRANTED IN PART.

MEMORANDUM OPINION - 1

**Below is a Memorandum Decision of the Court.**

**Background**

On May 27, 2011 the Debtor filed for bankruptcy under Chapter 11 of the Code.[1] The Debtor's members are Grant Learned Sr. and his wife, Carolyn Learned (the "**Sr. Learneds**"), and their son, Grant Learned Jr. ("**Learned Jr.**"). The Debtor's primary asset was the Kachess Lodge, located in Kittitas County at 950 Via Kachess Road, Easton, WA.

On November 13, 2012, I entered an order (the "**Confirmation Order**," Dkt. No. 102) confirming the Debtor's Chapter 11 Plan of Reorganization (the "**Plan**"). Under the Plan the Bank has two claims: (1) a Class 2 secured claim in the amount of $1.7 million, secured by the Kachess Lodge (the "**Secured Claim**"), to be paid in part with a balloon payment due by no later than January 1, 2016 (the "**Balloon Payment**"), and (2) a Class 3 unsecured claim in the amount of $2.2 million (the "**Unsecured Claim**") to be paid only in the event of default, and to be paid *pro rata* with other unsecured claims.

The Plan expressly incorporates a Release and Settlement Agreement between the Debtor, the Sr. Learneds, Learned Jr. and his wife, and the Bank (the "**Settlement Agreement**," Dkt. No. 83, Ex. D). Specifically, the Plan provides that: "The Settlement Agreement is incorporated into the Plan by reference and forms an *integral part* of the Plan."[2]

The Settlement Agreement sets forth revised payment terms between the Debtor and the Bank, and provides that if the Debtor defaults, the Bank can record a Deed-in-Lieu of Foreclosure (the "**Deed-in-Lieu**").

> Concurrently with the execution of this Agreement, the LLC shall deliver to the Bank a Deed-in-lieu of Foreclosure, signed and acknowledged and in recordable form. In the event of the LLC's default, the Bank may, in its sole discretion, record the Deed-in-lieu of Foreclosure in the records of Kittitas County.[3]

---

[1] All references to "Code" and "Section" herein refer to the Bankruptcy Code, 11 U.S.C. § 101 *et seq*.
[2] Plan, § 8.02.03 (emphasis added).
[3] Settlement Agreement, § 4(d)(1).

MEMORANDUM OPINION - 2

The Settlement Agreement further requires all parties to the agreement to cooperate with one another in implementing the Settlement Agreement:

> The Bank, the LLC, and the other Plaintiffs agree to *fully cooperate* with each other to ensure that each party obtains the benefits of the rights afforded to it under the LLC's Plan.
>
> a) The LLC shall provide quarterly and annual operating statements to the Bank . . .
>
> b) The LLC shall permit the Bank to appraise the Kachess Property throughout the term of the loan upon one week's notice and will assist and cooperate with any such appraisals. Such appraisals shall be at the Bank's own expense. The Bank and the LLC shall cooperate regarding scheduling to avoid interfering with paying guests.
>
> (c) lf the LLC *defaults* under the terms of the LLC's confirmed Plan, and the Bank initiates proceedings to foreclose on the Kachess Property, *whether by recording the Deed in Lieu of Foreclosure, or by commencing a non-judicial or judicial foreclosure action, the LLC shall not interfere* with those foreclosure proceedings.[4]

The Debtor defaulted under the terms of the Plan. The Debtor has made no payments on the Bank's Secured Claim since November 2015, it failed to make the Balloon Payment due on January 1, 2016, and has made no *pro rata* payments on the Unsecured Claim.

On or around January 4, 2016, Learned Jr., in his capacity as a member of the Debtor, executed and recorded a Quit Claim Deed which conveyed the Kachess Lodge from the Debtor to himself and to the Sr. Learneds. That same day, three hours later, the Sr. Learneds filed a Chapter 11 bankruptcy petition, commencing a bankruptcy case in the Eastern District of Washington (No. 16-00010-FLK, the "**Sr. Learneds' Bankruptcy Case**"). Shortly thereafter, the Bank commenced an adversary proceeding (Adv. No. 19-01005-MLB) in which I ruled that the conveyance of the Kachess Lodge from the Debtor to its members was an avoidable fraudulent transfer and a violation of Washington's Limited Liability

---

[4] Settlement Agreement, § 6 (emphasis added).

MEMORANDUM OPINION - 3

Company Act (the "**Partial Summary Judgment Order**"). Thereafter, in the Sr. Learneds' Bankruptcy Case, Judge Kurtz granted the Bank relief from stay to enforce my Partial Summary Judgment Order.

On June 20, 2016, the Sr. Learneds, Learned Jr. and his wife, and the Debtor filed a lawsuit against the Bank in Kittitas Superior Court, for quiet title, breach of contract, and declaratory and injunctive relief (Cause No. 16-2-00180-0, the "**Superior Court Action**"). Among other things, the Learneds and the Debtor are seeking damages for alleged breach of the Settlement Agreement and are challenging the Banks' recording of the Deed-in-Lieu as an ineffective and improper method of foreclosing on its security interest under state law.

On June 22, 2016, pursuant to the confirmed Plan, the Bank recorded the Partial Summary Judgment Order and the Deed-in-Lieu, effectuating transfer of the Kachess Lodge to the Bank pursuant to the court-approved Plan.

On June 24, 2016, the Bank's counsel requested the Sr. Learneds' cooperation with a Bank site inspection scheduled for June 29. Debtor's counsel responded by stating that, "The Learned's object to this alleged inspection. Any attempt to enter the property at this juncture will be considered a trespass." The Bank deferred the planned inspection.

Thereafter the Bank filed this Motion seeking to enforce the terms of the confirmed Plan.

## Analysis

**Section 1142**

Section 1142 requires a Debtor to carry out a confirmed plan, and authorizes the bankruptcy court to issue orders requiring the performance of any act that is necessary for the confirmation of the confirmed plan. Specifically, it provides that:

> (a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.

MEMORANDUM OPINION - 4

> (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

"Subsection (b) implicitly contemplates a creditor, shareholder, or other party affected by the plan moving for an order which triggers the court's authority to direct a recalcitrant debtor or other party to perform acts necessary to consummate the plan." *In re Harlow Properties Inc.*, 56 B.R. 794, 798 (9th Cir. B.A.P. 1985).

### Jurisdiction

A bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The Ninth Circuit has adopted the *Pacor* test for determining the scope of "related to" jurisdiction. *In re Fietz*, 852 f.2d 455, 457 (9th Cir. 1988) (adopting the test in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984), querying whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy).

Recognizing that the *Pacor* test "may be somewhat overbroad" in the post-confirmation context, the Ninth Circuit has adopted the Third Circuit's "close nexus" test for post-confirmation jurisdiction. *See In re Pegasus Gold Corp.,* 394 F.3d 1189, 1193-1194 (9th Cir. 2005). Under the "close nexus" test, "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.* at 1194 (citing *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004). "[M]atters affecting "the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.*

MEMORANDUM OPINION - 5

**Below is a Memorandum Decision of the Court.**

The Debtor argues that I lack jurisdiction because the Kachess Lodge revested in the reorganized Debtor upon Plan confirmation. However, the Plan's vesting language expressly conditions vesting upon other provisions of the Plan. It provides:

> Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's bankruptcy estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, *except as otherwise specifically provided in the Plan*. From and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code.[5]

Therefore, to the extent the Kachess Lodge vested in the reorganized Debtor, that vesting was subject to the Plan's terms -- which include the incorporated Settlement Agreement and the Bank's default remedies.

Moreover, regardless of the terms upon which the Kachess Lodge vested in the Debtor, I have jurisdiction because the Bank's request to force the Debtor's compliance with the Plan is premised on my authority set forth in § 1142, and the Bank is seeking to enforce its existing rights under the confirmed Plan. *See generally Harlow*, 56 B.R. at 797 (concluding the court had post-confirmation jurisdiction over property owned and occupied by the debtors). The disputes between the Debtor and the Bank arise from, and affect the implementation and consummation of, the Debtor's confirmed Plan, establishing a sufficiently "close nexus."

**Debtor's Default and Bank's Exercise of Remedy**

It is undisputed that the Debtor defaulted on its payment obligations under the confirmed Plan. The Plan, incorporating the Settlement Agreement, expressly requires that the parties cooperate in implementing its terms. It further provides that if the Debtor defaults under the terms of the confirmed

---

[5] Plan, § 8.08 (emphasis added).

MEMORANDUM OPINION - 6

Plan, and the Bank initiates proceedings to foreclose, "whether by recording the Deed in Lieu of Foreclosure" or otherwise, the Debtor "shall not interfere with those foreclosure proceedings."

Upon default, the Debtor and its members failed to cooperate with the Bank in implementing the Plan. In an apparent attempt to prevent the Bank from exercising its remedies, Jr. Learned transferred the Kachess Lodge to its members, and the Sr. Learneds then promptly filed for bankruptcy. The Bank had to file an adversary proceeding to have the conveyance deemed an avoidable fraudulent transfer, and then had to obtain relief from stay order in the Sr. Learneds' Bankruptcy to be able to formally avoid the conveyance.

The Plan explicitly provides that the Deed-in-Lieu which was executed and delivered to the Bank pursuant to the Settlement Agreement could be recorded upon the Debtor's default - thereby transferring the Kachess Lodge to the Bank. The terms could not have been more clear. Therefore, upon the Debtor's default, the Bank appropriately exercised the default remedy provided for in the Plan by recording the Deed-in-Lieu. The recorded Deed-in-Lieu transferred ownership of the Kachess Lodge, and all attendant rights of ownership, from the Debtor to the Bank.

**Debtor's Failure to Cooperate and Comply with the Plan**

The Debtor and its members continue to fail to cooperate in implementing the Plan, and are interfering with the Bank's rights of ownership of the Kachess Lodge. At the eleventh hour, the Debtor and its members are attempting to take this long-standing litigation regarding the Kachess Lodge out to state court, and argue that the state court is the appropriate forum for resolution of their disputes. I disagree. The Plan, incorporating the Settlement Agreement, was heavily negotiated, agreed to by the parties, and approved by me pursuant to my Confirmation Order. The Plan provided for agreed repayment terms upon which the Debtor defaulted. The Bank appropriately recorded the Deed-in-Lieu upon the Debtor's default, precisely as agreed by the parties and set forth in the Plan. Regardless of

MEMORANDUM OPINION - 7

whether state law would generally preclude a secured creditor from utilizing a deed held in escrow as a default remedy, the default remedies in the Plan were agreed to by the parties and, more importantly, court-ordered. Neither the Debtor nor its members have provided any authority precluding the effectiveness of a court-ordered deed, whether held in escrow or otherwise. Therefore, the recorded Deed-in-Lieu was effective to transfer the Kachess Lodge to the Bank in accordance with the terms of the Debtor's court-ordered bankruptcy Plan.

Furthermore, as mentioned above, the Settlement Agreement incorporated into the Plan was heavily negotiated between the Debtor, the Sr. Learned, Learned Jr., and the Bank. The Deed-in-Lieu remedy was not opposed at the confirmation hearing, over three years have passed since confirmation, and the Debtor and its members have derived benefits from the Plan. The Settlement Agreement is "integral" to the Plan. Accordingly, the Sr. Learneds, Learned Jr. and his wife, and the Debtor have waived the right to object to the Plan's terms, including the Deed-in-Lieu remedy, and/or are equitably estopped from denying the validity of the Plan. *See e.g. Riverside Nursing Home v. Northern Metropolitan Residential Health Care Facility Inc.*, 977 F.2d 78, 80-81 (2d. Cir. 1992) (finding that equitable estoppel precluded the debtor from objecting to appointment of a receiver expressly provided for in the debtor's confirmed plan, and requiring the debtor to sign the receivership agreement).

The Plan's Deed-in-Lieu provision necessarily encompasses providing the Bank with full rights of ownership of the Kachess Lodge upon implementation of the remedy. It would be meaningless to provide for a transfer of title if such transfer was not to be fully enforceable. In contravention of the Plan, the Debtor and/or its members have filed a lis pendens, clouding title to the property. In addition, the Sr. Learneds are residing at the Kachess Lodge, refusing to vacate the Kachess Lodge, and refusing to permit the Bank access to its property. The Sr. Learneds are also improperly attempting to claim a homestead exemption in the Kachess Lodge. Absent legal or equitable ownership, mere possession of a

MEMORANDUM OPINION - 8

property is not a sufficient basis to assert a homestead exemption. *See e.g., NW Cascade, Inc. v. Unique Cosntr., Inc.*, 187 Wn. App. 685, 697 (Wash. Ct. App. 2015). Here, the Debtor and its members all consented to the Deed-in-Lieu remedy, and the recorded Deed-in-Lieu transferred legal ownership from the Debtor to the Bank. The Sr. Learneds' assertion of a homestead interest is in contravention of the cooperation requirements set forth in the Plan, and inconsistent with and irrelevant to the negotiated, court-ordered Deed-in-Lieu remedy.[6] The Debtor is also allegedly continuing to accept reservations from future guests. All of these actions by the Debtor and its members directly affect the implementation and consummation of the Plan and contravene the efficacy of the Plan's terms.

**NOW THEREFORE, for the reasons set forth above, it is hereby ORDERED**,

(1) <u>Deed-in-Lieu.</u>  The Bank appropriately exercised the default remedy provided for in the Plan by recording the Deed-in-Lieu, which conveyed ownership of the Kachess Lodge from the Debtor to the Bank.

(2) <u>No Violation of State Law.</u>  Regardless of whether state law would generally preclude a secured creditor from utilizing a deed held in escrow as a default remedy, the terms of the Plan were negotiated, agreed to, and ultimately court-ordered; therefore, the Deed-in-Lieu was effective to transfer the Kachess Lodge to the Bank.

(3) <u>No Homestead.</u>  The Sr. Learneds have no valid homestead claim in the Kachess Lodge;

(4) <u>Lis Pendens.</u>  The Debtor and/or its members shall withdraw the lis pendens;

(5) <u>Cease and Desist.</u>  The Debtor and its members shall cease and desist from any action that interferes with the Bank's full rights of ownership of the Kachess Lodge;

---

[6] Homestead exemptions are irrelevant to enforcement of consensual security interests, and the Bank's Deed-in-Lieu remedy flowed from its consensual deed of trust. *See generally* RCW 6.13.080(2). Therefore, any homestead interest claimed by the Sr. Learneds is irrelevant to the efficacy of the transfer of the Kachess Lodge to the Bank, and does not create an excuse for their non-cooperation under the Plan.

MEMORANDUM OPINION - 9

(6) <u>Vacate.</u>  The Sr. Learneds shall vacate the Kachess Lodge within 20 days of the date this order is entered;

(7) <u>Report.</u>  The Debtor and its members shall file by no later than August 16, 2016, a report, which shall be dated and signed under penalty of perjury by the Debtor, the Sr. Learneds, and Learned Jr., stating the Debtor has complied with all of the terms of this Order or identifying the parts of this Order that the Debtor did not comply with and the reasons why the Debtor did not comply.

(8) <u>Matter Continued.</u>  This matter is continued to September 1, 2016 at 9:30 a.m. for further consideration of appropriate remedies, including, but not limited to:  (a) whether I will require the U.S. Marshals to evict the Sr. Learneds from the Kachess Lodge, (b) whether I will require the Debtor to file a further accounting,  (c) whether I will require the Debtor and/or its members to distribute all of the Debtor's remaining funds, (d) whether I will require the Debtor and its members to take further action regarding pending guest reservations, and (e) whether I will require the Debtor and its members to dismiss the Superior Court Action.  At the continued hearing on August 2, 2016, the Court will address a briefing schedule for the September 1, 2016 hearing.

/// **END OF OPINION** ///

MEMORANDUM OPINION - 10